FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

AUG 1 8 2006

DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:06-00147 |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| JERRY C. PENDERGRASS | ) | 18 U.S.C. § 371 |
| ALAN L. SATURN | ) | 26 U.S.C. § 7201 |
| ALAN D. MAZER | ) | 26 U.S.C. § 7206(1) |
| JAMES M. HAMMONDS | ) | 26 U.S.C. § 7206(2) |

# INDICTMENT

At all time material to this Indictment:

## Introduction

1. The Internal Revenue Service ("IRS") was an agency within the Department of Treasury responsible for administering and enforcing the tax laws of the United States, and collecting taxes owed to the Treasury of the United States by its citizens and other entities.

2. **JERRY C. PENDERGRASS** ("Pendergrass") was a resident of Nashville, Tennessee and the sole shareholder of 822 Corporation, a corporation operating in Nashville, Tennessee doing business as Metro News also known as World's Largest Adult Bookstore ("822 Corporation"). Pendergrass was also the sole shareholder of Southern Secrets, Inc., a corporation operating as an adult bookstore in Clarksville, Tennessee until the business was sold in or about April 2000. Pendergrass also owned and operated two adult bookstores in the Chattanooga, Tennessee area, which were known as Rossville News, doing business as Midnite Video, and Broad St Video and were operated as sole proprietorships. At various times during

1

the period relevant to this Indictment, Pendergrass was involved in, or held an interest in, the following business ventures: The Outer Limit of Nashville, LLC (a night club), C C Electronics, Inc. (a gambling machine business), Video Express (an adult bookstore), Royal Bronze (a retail bronze statue business), I-40 Bookstore (an adult bookstore), and Galerie Erotique (an adult bookstore).

3. **JAMES M. HAMMONDS** was a resident of Cleveland, Tennessee who operated Financial Investigations, Inc., a business in Cleveland, Tennessee, that provided payroll, bookkeeping, and tax preparation services including representation of clients regarding federal taxes before the IRS. **JAMES M. HAMMONDS** previously served as a Special Agent for the Criminal Investigation Division of the Internal Revenue Service from in or about 1972 to in or about 1985.

4. Beginning in or about 1990, **JAMES M. HAMMONDS**, doing business as Financial Investigations, Inc., was the bookkeeper and the tax return preparer for the individual tax returns (Forms 1040) of **JERRY C. PENDERGRASS** as well as the corporate tax returns (Forms 1120) for 822 Corporation. From at least in or about early 1999 through at least in or about the end of 2002, **JERRY C. PENDERGRASS** paid Financial Investigations, Inc., approximately $1,000.00 per week for these services.

5. **ALAN L. SATURN** and **ALAN D. MAZER** were attorneys and residents of Nashville, Tennessee, who owned and operated Saturn and Mazer Title Services, Inc. ("SMTS"), a law firm and real estate title company in Nashville, Tennessee. **ALAN L. SATURN** was generally responsible for conducting real estate closings. **ALAN D. MAZER** was generally responsible for conducting the title work relative to real estate closings.

6. On or about June 2, 1999, a Notice of Federal Tax Lien was filed in the Davidson County Register of Deeds in Nashville, Tennessee, relative to the outstanding tax obligations of **JERRY C. PENDERGRASS** for his 1996 and 1997 Forms 1040 in the amount of $302,059.07.

7. On or about March 7, 2000, a Notice of Federal Tax Lien was filed in the Davidson County Register of Deeds in Nashville, Tennessee, relative to the outstanding tax obligations of **JERRY C. PENDERGRASS** for his 1998 Form 1040 in the amount of $263,817.65.

## COUNT ONE

THE GRAND JURY CHARGES:

The allegations contained in Paragraphs One through Two and Five through Seven of the Introduction are realleged and incorporated herein.

### The Conspiracy

1. From in or about August 1996, and continuing until on or about August 29, 2000, in the Middle District of Tennessee and elsewhere, the defendants, **JERRY C. PENDERGRASS, ALAN L. SATURN, ALAN D. MAZER**, and others to the Grand Jury both known and unknown, did combine, conspire, confederate, and agree to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, individual income taxes of **JERRY C. PENDERGRASS**.

### Manner and Means

The manner and means by which the conspiracy was sought to be accomplished included,

3

among others, the following:

2. Defendant **JERRY C. PENDERGRASS** attempted to conceal his ownership interest in the property located at 1049 Hickory Hollow Road located in Nashville, Davidson County, Tennessee ("the Hickory Hollow property") by failing to record a deed when he purchased the property in or about August 1996 from the owners of the property at that time, who are known to the Grand Jury and whose initials are T.P. and P.P.

3. Defendant **JERRY C. PENDERGRASS** attempted to conceal his ownership of the Hickory Hollow property by making payments on the property between in or about August 1996 and in or about February 1999 to T.P. and P.P. by cash and third-party checks, some of which were styled on accounts of C C Electronics, Inc.

4. Defendants **JERRY C. PENDERGRASS**, **ALAN L. SATURN**, and **ALAN D. MAZER** attempted to conceal defendant **JERRY C. PENDERGRASS**'s interest in the Hickory Hollow property and attempted to conceal defendant **JERRY C. PENDERGRASS**'s receipt of proceeds from the sale of the Hickory Hollow property to avoid liens and seizures by the IRS.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Tennessee, and elsewhere:

5. In or about August 1996, **JERRY C. PENDERGRASS** purchased the Hickory Hollow property from T.P. and P.P.; however, neither **JERRY C. PENDERGRASS** nor T.P. and P.P. recorded a deed showing the transfer of the property in Davidson County, Tennessee, or elsewhere.

6. Between in or about August 1996 and continuing up until in or about February 1999,

4

**JERRY C. PENDERGRASS** made approximately 53 payments to T.P. and P.P. for the Hickory Hollow property by cash and check totaling approximately $420,000.00. Of these payments, **JERRY C. PENDERGRASS** made approximately 16 payments in cash to T.P. and P.P. in the amount of $10,000.00 each. **JERRY C. PENDERGRASS** made approximately 37 payments by check to T.P. and P.P. in varying amounts, some of which were styled on bank accounts of C C Electronics, Inc.

7. In or about December 1998, **JERRY C. PENDERGRASS** hired a realtor, who is known to the Grand Jury and whose initials are J.H., to sell the Hickory Hollow property.

8. In or about 1998 or 1999, the exact date being unknown to the Grand Jury, **JERRY C. PENDERGRASS** hired SMTS to handle the real estate closing for the Hickory Hollow property.

9. On or about February 8, 1999, SMTS faxed a Davidson County tax record indicating that the Hickory Hollow property was listed in the names of T.P. and P.P.

10. In or about summer 2000, **JERRY C. PENDERGRASS** began negotiations, through J. H., with the real estate agent for an individual, who is known to the Grand Jury and whose initials are B.B., to purchase the Hickory Hollow property.

11. In or about summer 2000, SMTS established a file for the sale of the Hickory Hollow property reflecting **JERRY C. PENDERGRASS** as the seller and B.B. as the purchaser.

12. Between in or around 1998 and in or around 2000, **ALAN D. MAZER** conducted title research on the Hickory Hollow property and completed two "Title Research Worksheets." One of these Title Research Worksheets listed T.P. and P.P. as the sellers and **JERRY C. PENDERGRASS** as the buyer of the Hickory Hollow property. The other Title Research

5

Worksheet listed **JERRY C. PENDERGRASS** as the seller and B.B. as the buyer of the Hickory Hollow property and stated that **JERRY C. PENDERGRASS** has federal tax liens filed against him in Nashville, Davidson County, Tennessee.

13. On or about July 10, 2000, **JERRY C. PENDERGRASS**, through J.H., received a purchase and sale agreement ("the contract") from B.B. through her real estate agent offering to purchase the Hickory Hollow property for the amount of $300,000.00. The contract listed **JERRY C. PENDERGRASS** as the seller and B.B. as the buyer. J.H., with authorization from **JERRY C. PENDERGRASS**, modified the contract and made a counteroffer of $350,000.00. B.B. accepted this counteroffer on or about July 11, 2000.

14. On or about July 11, 2000, J.H. faxed the contract to SMTS for review by **ALAN L. SATURN**. On or about July 12, 2000, **ALAN L. SATURN** faxed the contract to J.H.

15. In or about July 2000, a dispute arose regarding the boundary lines of the Hickory Hollow property, necessitating a survey of the property. On or about July 24, 2000, **ALAN L. SATURN** signed an agreement on behalf of **JERRY C. PENDERGRASS** stating that **JERRY C. PENDERGRASS** would pay for a survey of the Hickory Hollow property. On or about August 21, 2000, $20,000.00 was withheld from **JERRY C. PENDERGRASS**'s proceeds of the sale of the Hickory Hollow property and placed into an escrow account. This money was to be used to settle the boundary dispute, if necessary.

16. In or about August 2000, SMTS prepared a Warranty Deed for the sale of the Hickory Hollow property listing T.P. and P.P. as the grantors and B.B. as the grantee.

17. On or about August 18, 2000, **ALAN L. SATURN** and **ALAN D. MAZER** obtained a power of attorney, signed by T.P. and P.P., authorizing them to act on behalf of T.P. and P.P.

6

regarding the sale of the Hickory Hollow property ("the power of attorney"). This agreement was signed despite the fact that **ALAN L. SATURN** and **ALAN D. MAZER** knew and believed that **JERRY C. PENDERGRASS** was the true owner of the Hickory Hollow property.

18. On or about August 20, 2000, **ALAN D. MAZER** signed a statement pursuant to the power of attorney certifying that T.P. and P.P. were the owners of the Hickory Hollow property and that there were no other owners of the Hickory Hollow property. **ALAN D. MAZER** signed this statement although he knew and believed that **JERRY C. PENDERGRASS** was the true owner of the Hickory Hollow property.

19. On or about August 21, 2000, **ALAN D. MAZER** signed an affidavit pursuant to the power of attorney representing that there were no liens or encumbrances on the Hickory Hollow property. This document was notarized by **ALAN L. SATURN**. **ALAN D. MAZER** and **ALAN L. SATURN** signed and notarized this affidavit although they knew and believed that **JERRY C. PENDERGRASS** was the true owner of the Hickory Hollow property and that the Hickory Hollow property was encumbered by the federal tax liens filed against **JERRY C. PENDERGRASS**.

20. On or about August 21, 2000, **ALAN D. MAZER** modified the contract to list T.P. and P.P. as the sellers of the Hickory Hollow property and signed the contract pursuant to the power of attorney. **ALAN D. MAZER** modified the contract to include T.P. and P.P. as the sellers of the Hickory Hollow property despite the fact that he knew and believed that **JERRY C. PENDERGRASS** was the true owner of the Hickory Hollow property.

21. On or about August 22, 2000, T.P. deposited the proceeds check from the sale of the Hickory Hollow property for $300,935.53 into his checking account.

7

22. On or about August 22, 2000, T.P. wrote two checks, numbers 3929 and 3930, totaling $300,935.53, payable to **JERRY C. PENDERGRASS**.

23. On or about August 29, 2000, **JERRY C. PENDERGRASS** deposited the two checks from T.P. into a checking account for Rossville News.

24. In or about August 2000, **ALAN D. MAZER** completed a form on behalf of T.P. and P.P., pursuant to the power of attorney, which indicated that T.P. and P.P. were the sellers of the Hickory Hollow property and that the information on the form was correct and would be filed with the Internal Revenue Service. However, SMTS never filed this information with the IRS.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNT TWO

THE GRAND JURY FURTHER CHARGES:

The allegations contained in Paragraphs One through Two and Five through Seven of the Introduction and in Paragraphs Five through Twenty-Four of Count One are realleged and incorporated herein.

### Evasion of Payment

From in or about August 1996, and continuing until on or about September 17, 2001, in the Middle District of Tennessee and elsewhere, the defendants, **JERRY C. PENDERGRASS**, **ALAN L. SATURN**, and **ALAN D. MAZER**, did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by defendant **JERRY C. PENDERGRASS** to the United States of America for the calendar years 1997 and 1998, in the amounts of $198,548.00 and $230,156.00, by among other things, use of nominees to conceal the true nature and extent of **JERRY C. PENDERGRASS**'s ownership interest in the Hickory Hollow property and to conceal **JERRY C. PENDERGRASS**'s receipt of proceeds from the sale of the Hickory Hollow property in order to avoid the satisfaction of the liens and seizure of the sale proceeds by the IRS.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

## COUNT THREE

THE GRAND JURY FURTHER CHARGES:

### Introduction

The allegations contained in Paragraphs One through Four of the Introduction are realleged and incorporated herein.

### The Conspiracy

1. From in or about January 1999, and continuing until on or about December 16, 2003, in the Middle District of Tennessee and elsewhere, the defendants, **JERRY C. PENDERGRASS** and **JAMES M. HAMMONDS**, and others to the Grand Jury both known and unknown, did combine, conspire, confederate, and agree to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, corporate income taxes of 822 Corporation and individual income taxes of **JERRY C. PENDERGRASS**.

### Manner and Means

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

2. Defendants **JERRY C. PENDERGRASS** and **JAMES M. HAMMONDS** conspired to hide assets and conceal income and expenditures of **JERRY C. PENDERGRASS** and 822 Corporation from the IRS through deceitful and dishonest means.

3. For tax years 1999, 2000, 2001, and 2002, defendants **JERRY C. PENDERGRASS** and **JAMES M. HAMMONDS** prepared, filed, and caused to be prepared and filed with the

10

IRS false corporate federal income tax returns (Forms 1120) for 822 Corporation and false individual federal income tax returns (Forms 1040) for **JERRY C. PENDERGRASS**.

4. For tax years 1999 through 2002, **JERRY C. PENDERGRASS** and **JAMES M. HAMMONDS** would and did prepare false corporate federal income tax returns (Forms 1120) for 822 Corporation which reported false and fraudulent deductions for expenses, including personal expenses of **JERRY C. PENDERGRASS** and expenses of other businesses owned or operated by **JERRY C. PENDERGRASS**, that both **JERRY C. PENDERGRASS** and **JAMES M. HAMMONDS** knew were not incurred by 822 Corporation. The false and fraudulent deductions on these corporate returns totaled approximately $400,000.00. These corporate returns also included balance sheets listing false and fraudulent assets.

5. **JERRY C. PENDERGRASS** received additional personal income during tax years 1999 through 2002 totaling approximately $3,000,000.00, including unreported cash receipts from 822 Corporation and rental income, that was not reported on his individual income tax returns (Forms 1040). These individual returns also did not report as income the payment of personal expenses of **JERRY C. PENDERGRASS** by 822 Corporation.

6. **JAMES M. HAMMONDS** prepared or caused to be prepared false and fraudulent financial statements (Forms 433-A) on behalf of **JERRY C. PENDERGRASS** and submitted such statements to the IRS that misstated the financial condition of **JERRY C. PENDERGRASS** and 822 Corporation to the IRS.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Tennessee, and elsewhere:

11

7. On or about June 8, 1999 and December 8, 1999, **JAMES M. HAMMONDS** prepared personal financial statements of **JERRY C. PENDERGRASS** which did not report any loans from 822 Corporation to **JERRY C. PENDERGRASS** and faxed those statements to an insurance agency.

8. On or about July 6, 1999 and December 21, 1999, **JAMES M. HAMMONDS** provided Forms 433-A to the IRS, which he signed under the penalties of perjury, that were false and fraudulent in that the forms failed to report all of the assets, liabilities, and income of **JERRY C. PENDERGRASS**.

9. On or about September 15, 2000, the false and fraudulent 1999 corporate income tax return (Form 1120) for 822 Corporation was filed with the IRS. The Form 1120 was signed by **JAMES M. HAMMONDS** on or about September 12, 2000, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about September 12, 2000, as the taxpayer.

10. On or about October 30, 2000, the false and fraudulent 1999 individual income tax return (Form 1040) for **JERRY C. PENDERGRASS** was filed with the IRS. The Form 1040 was signed by **JAMES M. HAMMONDS** on or about October 12, 2000, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about October 13, 2000, as the taxpayer.

11. On or about September 19, 2001, the false and fraudulent 2000 corporate income tax return (Form 1120) for 822 Corporation was filed with the IRS. The Form 1120 was signed by **JAMES M. HAMMONDS** on or about September 14, 2001, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about September 15, 2001, as the taxpayer.

12. On or about October 23, 2001, the false and fraudulent 2000 individual income tax return (Form 1040) for **JERRY C. PENDERGRASS** was filed with the IRS. The Form 1040

was signed by **JAMES M. HAMMONDS** on or about October 11, 2001, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about October 15, 2001, as the taxpayer.

13. On or about September 16, 2002, the false and fraudulent 2001 corporate income tax return (Form 1120) for 822 Corporation was filed with the IRS. The Form 1120 was signed by **JAMES M. HAMMONDS** on or about September 4, 2002, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about September 14, 2002, as the taxpayer.

14. On or about October 18, 2002, the false and fraudulent 2001 individual income tax return (Form 1040) for **JERRY C. PENDERGRASS** was filed with the IRS. The Form 1040 was signed by **JAMES M. HAMMONDS** on or about October 11, 2002, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about October 14, 2002, as the taxpayer.

15. On or about September 18, 2003, the false and fraudulent 2002 corporate income tax return (Form 1120) for 822 Corporation was initially filed with the IRS. The Form 1120 was signed by **JAMES M. HAMMONDS** on or about September 15, 2003, as the paid preparer. The Form 1120 was subsequently returned to **JERRY C. PENDERGRASS** who signed the return as the taxpayer on or about December 16, 2003, and filed the return with the IRS.

16. On or about October 20, 2003, the false and fraudulent 2002 individual income tax return (Form 1040) for **JERRY C. PENDERGRASS** was filed with the IRS. The Form 1040 was signed by **JAMES M. HAMMONDS** on or about October 13, 2003, as the paid preparer, and was signed by **JERRY C. PENDERGRASS** on or about October 15, 2003, as the taxpayer.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNTS FOUR THROUGH SEVEN

THE GRAND JURY FURTHER CHARGES:

The allegations contained in Paragraphs One through Four of the Introduction and Paragraphs Two, Three, Five, Ten, Twelve, Fourteen and Sixteen of Count Three are realleged and incorporated herein.

That on or about the dates listed in the chart below, in the Middle District of Tennessee and elsewhere the defendant, **JERRY C. PENDERGRASS**, did willfully make and subscribe to the documents listed below for the calendar years listed below, which were verified by a written declaration that they were made under the penalties of perjury and were filed with the Internal Revenue Service, which said documents he did not believe to be true and correct as to every material matter in that they reported on Line 22, "total income," in the respective amounts listed below, whereas, as he then and there well knew and believed, he had total income substantially in excess of the amounts reported.

| Count | Date | Document | Year | Line 22 - total income |
|---|---|---|---|---|
| 4 | 10/13/00 | Form 1040 | 1999 | $519,233 |
| 5 | 10/15/01 | Form 1040 | 2000 | $635,982 |
| 6 | 10/14/02 | Form 1040 | 2001 | $480,746 |
| 7 | 10/15/03 | Form 1040 | 2002 | $22,664 |

All in violation of Title 26, United States Code, Section 7206(1).

14

## COUNTS EIGHT THROUGH ELEVEN

THE GRAND JURY FURTHER CHARGES:

The allegations contained in Paragraphs One through Four of the Introduction and Paragraphs Two through Four, Nine, Eleven, Thirteen and Fifteen of Count Three are realleged and incorporated herein.

That on or about the dates listed in the chart below, in the Middle District of Tennessee and elsewhere the defendant, **JERRY C. PENDERGRASS**, did willfully make and subscribe to the documents for 822 Corporation listed below for the calendar years listed below, which were verified by a written declaration that they were made under the penalties of perjury and were filed with the Internal Revenue Service, which said documents he did not believe to be true and correct as to every material matter in that they reported on Line 27, "Total deductions," in the respective amounts listed below, whereas, as he then and there well knew and believed, the true and correct total deductions were substantially less than the amounts reported.

| Count | Date     | Document  | Year | Line 27 - Total deductions |
|-------|----------|-----------|------|----------------------------|
| 8     | 9/12/00  | Form 1120 | 1999 | $1,091,194                 |
| 9     | 9/15/01  | Form 1120 | 2000 | $822,493                   |
| 10    | 9/14/02  | Form 1120 | 2001 | $1,065,241                 |
| 11    | 12/16/03 | Form 1120 | 2002 | $745,605                   |

All in violation of Title 26, United States Code, Section 7206(1).

15

## COUNTS TWELVE THROUGH FIFTEEN

THE GRAND JURY FURTHER CHARGES:

The allegations contained in Paragraphs One through Four of the Introduction and Paragraphs Two, Three, Five, Ten, Twelve, Fourteen and Sixteen of Count Three are realleged and incorporated herein.

That on or about the dates listed in the chart below, in the Middle District of Tennessee and elsewhere the defendant, **JAMES M. HAMMONDS**, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under the Internal Revenue laws, of the individual income tax returns listed below, for **JERRY C. PENDERGRASS**, for the calendar years listed below which were false and fraudulent as to a material matter, in that they reported on Line 22, "total income," in the respective amounts listed below, whereas, as the defendant then and there well knew and believed, **JERRY C. PENDERGRASS** had total income substantially in excess of the amounts reported.

| Count | Date | Document | Year | Line 22 - total income |
|---|---|---|---|---|
| 12 | 10/12/00 | Form 1040 | 1999 | $519,233 |
| 13 | 10/11/01 | Form 1040 | 2000 | $635,982 |
| 14 | 10/11/02 | Form 1040 | 2001 | $480,746 |
| 15 | 10/13/03 | Form 1040 | 2002 | $22,664 |

All in violation of Title 26, United States Code, Section 7206(2).

16

## COUNTS SIXTEEN THROUGH NINETEEN

THE GRAND JURY FURTHER CHARGES:

The allegations contained in Paragraphs One through Four of the Introduction and Paragraphs Two through Four, Nine, Eleven, Thirteen and Fifteen of Count Three are realleged and incorporated herein.

That on or about the dates listed in the chart below, in the Middle District of Tennessee and elsewhere the defendant, **JAMES M. HAMMONDS**, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under the Internal Revenue laws, of the corporate tax returns for 822 Corporation listed below for the calendar years listed below which were false and fraudulent as to a material matter, in that they included the false items listed below, whereas, as the defendant then and there well knew and believed, the amounts for said items were not the true and correct amounts.

| Count | Date | Document | Year | False Items |
|---|---|---|---|---|
| 16 | 9/12/00 | Form 1120 | 1999 | Line 12 - Compensation of officers - $130,000<br>Line 27 - Total deductions - $1,091,194 |
| 17 | 9/14/01 | Form 1120 | 2000 | Line 12 - Compensation of officers - $130,000<br>Line 27 - Total deductions - $822,493 |
| 18 | 9/4/02 | Form 1120 | 2001 | Line 12 - Compensation of officers - $30,000<br>Line 27 - Total deductions - $1,065,241 |
| 19 | 9/15/03 | Form 1120 | 2002 | Line 12 - Compensation of officers - $0<br>Line 27 - Total deductions - $745,605 |

All in violation of Title 26, United States Code, Section 7206(2).

A TRUE BILL

FOREPERSON

_____, FAUSA
JAMES K. VINES
UNITED STATES ATTORNEY