UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:06-00147 |
| ) | Judge Echols |
| JERRY C. PENDERGRASS, ALAN L. ) | |
| SATURN, ALAN D. MAZER, and ) | |
| JAMES M. HAMMONDS. ) | |

## MEMORANDUM

Pending before the Court is Defendant James M. Hammonds' ("Hammonds') "Motion to Suppress Statements" (Docket Entry No. 28), to which the Government has responded in opposition (Docket Entry No. 37). An evidentiary hearing on the Motion was held on January 17, 2007.

## I. FACTS

Based upon the evidence presented at the evidentiary hearing, the Court finds the following to be the relevant facts.

Beginning in late 2003 or early 2004, Special Agent Ken Runkle ("Runkle") of the Internal Revenue Service ("IRS") became involved in a grand jury investigation of Defendant Jerry C. Pendergrass ("Pendergrass"). During the course of the investigation, Runkle twice interviewed Hammonds, Pendergrass' bookkeeper and tax return preparer.[1] It is those interviews which are the subject of the Motion to Suppress Statements.

---

[1] Hammonds himself is a former Special Agent of the Internal Revenue Service.

1

The first interview occurred on May 5, 2004, at Hammonds' Cleveland, Tennessee office. Present at the interview were Runkle, Hammonds, and Janet Cunningham ("Cunningham"), a Revenue Agent for the IRS. The interview lasted approximately two hours.[2]

During the course of the interview, Runkle informed Hammonds that he was assisting in a grand jury investigation of Pendergrass and asked Hammonds whether he would be willing to answer some questions. Hammonds agreed. Hammonds then answered questions posed by Runkle who was trying to establish that certain tax returns were submitted by Pendergrass. Hammonds also answered questions regarding his preparation of Pendergrass' tax returns and the bookkeeping work he did for Pendergrass.

During the first interview Runkle did not advise Hammonds of his <u>Miranda</u> rights. At that time, Runkle did not believe Hammonds had done anything illegal in relation to his bookkeeping or preparation of tax returns for Pendergrass, nor did Runkle consider Hammonds to be a target of the grand jury investigation. Hammonds was never in custody and voluntarily answered the questions presented.

Either at the conclusion of the first interview or shortly thereafter, Runkle served Hammonds with two grand jury subpoenas, requiring Hammonds to appear before the grand jury on May 26, 2004, and to produce certain tax and financial documents related to Pendergrass.

On the morning scheduled for Hammonds' production of tax records related to Pendergrass and his testimony before the grand jury, May 26, 2004, Runkle met Hammonds in the waiting room

---

[2]During the evidentiary hearing, Runkle testified on direct examination that he thought the interview lasted between forty-five minutes and an hour. On cross-examination he stated he could not remember how long the interview lasted, only that it was not an all day event. His notes, which were made contemporaneously with the interview, indicate that the interview lasted from 1:45 to 3:45 p.m., and thus the Court finds the interview lasted approximately two hours.

of the United States Attorney's office and asked if he could interview him again before he spoke to the grand jury. At that time Hammonds was accompanied by Pendergrass's attorney Kemper. Hammonds agreed. Mr. Kemper was not invited to sit in during the interview, and Hammonds did not protest or request that Kemper be present. Therefore, Runkle and Cunningham interviewed Hammonds for a second time, this time in a downstairs IRS conference room at the federal building in Nashville.

Again, Hammonds was not in custody, nor was he given any Miranda warnings. Hammonds answered questions freely. However, some of his answers raised new suspicions about Hammonds' participation in Pendergrass' tax returns, including his alleged statement that Hammonds requested and received twice as much money to perform bookkeeping services for Pendergrass after a prior audit. Also, Hammonds allegedly admitted that he did not accurately calculate certain line items on Pendergrass' Schedule L Corporate Tax Returns, but instead "plugged" in an amount which would make the items balance. (Hrg. Ex. 3, ¶¶ 30 & 41).

The interview began at approximately 9:45 a.m. and continued until the parties recessed for lunch at noon. Over the noon recess, Runkle conferred with others in the IRS office about some of Hammonds' statements, and they agreed he had some exposure to potential criminal charges. Afterward, Runkle met with the Assistant United States Attorney who was handling the Pendergrass grand jury investigation. After discussing Hammonds' interview statements, they both agreed that Hammonds had potential exposure to criminal charges and that Hammonds should be given a target letter which was prepared immediately. Hammonds was provided the letter after lunch.

That afternoon, Hammonds appeared before the grand jury investigating Pendergrass. His appearance was limited solely to questions relating to his being the custodian of financial records for Pendergrass.

On August 18, 2006, a grand jury returned a nineteen-count Indictment against Pendergrass, Hammonds, and two other Defendants. In Count Three, Hammonds was charged with conspiring with Pendergrass to defraud the United States of tax revenue in relation to Pendergrass' individual and corporate income taxes for calendar years 1999 to 2002. In Counts Twelve Through Fifteen, Hammonds was alleged to have assisted and advised in the preparation of tax returns for calendar years 1999 to 2002, in which Pendergrass was alleged to have substantially under-reported his total income. Finally, in Counts Sixteen through Nineteen, Hammonds was alleged to have assisted in the preparation of the tax returns for Pendergrass' 822 Corporation for calendar years 2000 through 2003, in which the compensation of officers was falsely reported and the total deductions were overstated.

## II. **APPLICATION OF LAW**

In his Motion to Suppress Statements, Hammonds seeks to suppress the statements he made to Runkle during the May 5 and May 26, 2004 interviews. Hammonds claims that pursuant to a News Release from the IRS issued on October 3, 1967, Runkle was required to advise Hammonds of his constitutional right to remain silent and the right to retain counsel prior to an interview. The Government counters that Runkle's actions were proper under the law and in accordance with the governing IRS Manual and the law.

Initially, the Court rejects Hammonds' assertion that Runkle's alleged failure to comply with the 1967 IRS Press Release means that Hammonds' statements must be suppressed. "[T]he federal exclusionary rule, which forbids the use of evidence obtained in violation of the Fourth or Fifth

4

Amendments, does not extend to violations of statutes and regulations." United States v. Kontny, 238 F.3d 815, 818 (7th Cir. 2001). Hence, merely because the IRS may have implemented a regulation or internal policy (in this case issued a press release) governing when an agent should provide Miranda warnings, does not, standing alone, require suppression of the evidence obtained. See, United States v. Caceres, 440 U.S. 741, 755 (1979).[3]

Under Miranda v. Arizona, 384 U.S. 436, 444 (1966), law enforcement officers must issue prophylactic warnings regarding the privilege against self-incrimination to any suspect subjected to custodial interrogation. This applies to interviews by IRS agents concerning tax liability. Mathis v. United States, 391 U.S. 1, 3 (1968).

Therefore, a threshold requirement for the application of the warnings required by Miranda is that the person being questioned be in custody. See, Miranda, 384 U.S. at 445 ("The constitutional issue we decide in each of these cases is the admissibility of statements obtained from a defendant questioned while in custody"); Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)("The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its equivalent"); United States v. Williams, 2007 WL 612607 at *2 (6th Cir. 2007)("threshold conditions of Miranda" are that the suspect be in custody and the police asked questions tending to incriminate without advising suspect of right to remain silent).

In determining whether an individual is in custody, a court is to "look to the totality of the circumstances 'to determine how a reasonable man in the suspect's position would have understood

---

[3]The Sixth Circuit's decision in United States v. McKee, 192 F.3d 535, 541 (6th Cir. 1999)(emphasis added), relied upon by Hammonds, does not hold otherwise. In that case, the Sixth Circuit joined the Seventh and Eighth Circuits which had held that "a taxpayer may challenge a conviction by relying on the [IRS] Manual's provisions, so long as the taxpayer's challenge was based on an alleged violation of a constitutional right."

5

the situation.'" United States v. Swanson, 341 F.3d 524, 528 (6th Cir. 2003)(citation omitted). "The 'ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Id. (citation omitted).

In this case, Hammonds does not argue that he was subjected to a custodial interrogation, nor could he plausibly make such an argument. During the first interview, Hammonds, a seasoned former Special Agent of the IRS, was questioned in his own office; the second time the interview took place in an IRS conference room. There is no suggestion, let alone any evidence, that either setting was inherently hostile or coercive, nor is there any evidence that Hammonds was not free to move about, talk with his attorney, or leave should he have desired to do so. The purpose for each interview was to question Hammonds about his preparation of tax forms and bookkeeping services for Pendergrass, who was under investigation. The questions being posed initially were not to determine Hammonds' potential criminal conduct.[4] Hammonds was asked to answer questions and he chose to do so freely.

The facts suggested at the suppression hearing show clearly that Hammonds was not subjected to a custodial interrogation. See, id. (listing factors to be used in determining whether defendant was in custody when questioned). Because Hammonds was not in custody, Miranda does not apply. Moreover, the fact that Runkle may not have followed a 1967 Press Release does not establish that Hammonds' privilege against self-incrimination has been violated. Accordingly, his Motion to Suppress Statements will be denied.

---

[4]Even if Runkle thought Hammonds might be subject to criminal liability, the outcome would be no different. "It is well settled . . . that a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of Miranda." Stansbury v. California, 511 U.S. 318, 325 (1994). This is because "[t]he threat to a citizen's Fifth Amendment rights that Miranda was designed to neutralize has little to do with the strength of an interrogating officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 435 n. 22 (1984).

### III. CONCLUSION

For the foregoing reasons, Defendant Hammonds' "Motion to Suppress Statements" (Docket Entry No. 28) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE